Daniels, J.
The verdict was rendered for the amount considered by the jury to be unpaid for services performed and materials supplied by the plaintiffs for the defendant. There was no dispute as to what had been done or as to the materials furnished, by them for him. The larger part was for the excavation required, and the labor, and the materials used, in finishing the cellar of the dwelling known as No. 121 East Twenty-fourth street.
They were asserted to have been performed and supplied under a special agreement, by which the plaintiffs agreed to finish the cellar in such a manner that it would be afterwards dry and free from water, and for a stipulated price. There was a controversy in the case concerning the making of the agreement,, the defendant testifying that the plaintiff, by whom the business was transacted in behalf of their firm guaranteed that the cellar should be dry, while this plaintiff in his evidence denied the making of this guaranty, but at the same time conceded that he said the work to be done would, in his judgment, make a tight cellar.
The jury could very well determine from this state of the evidence, as they seem to have done, as they *174 rejected the fourth cause of action, which included the charges made for the subsequent work" required to make the cellar dry, that the agreement did contain the guaranty mentioned by the defendant.
' The first work was finished in December, 1874. That was deemed to be all that was needed to render the cellar dry, and to finish it in other respects, as it was desired, and expected that it would be done. And a bill of the labor performed and materials furnished up to that time was rendered to the defendant, and payments were made, as the plaintiff examined as a witness testified, upon this bill, but as the defendant stated them, they were upon the contract. Which statement was most probably correct cannot be very important in the disposition of the appeals, for, as the-money was received by the plaintiffs, it had the effect of reducing the demand, and in that manner the defendant had the full benefit of it in the decision of the case.
But after that work had beén done, it proved to be incomplete in the exclusion of water from the cellar. That still collected there, above the cellar bottom put in by the plaintiffs, to such an extent as to render the dwelling improper for domestic uses. And when the' plaintiffs’ attention was directed to that fact, they resumed their work there again, to secure the end both parties had in view, of making a dry cellar. To do that, required that part of the cellar bottom, which had been laid, should be taken up, and a connection made with a sewer to carry the water accumulating from a spring supplying an old well, away from the-building. By making that connection and restoring and adding to the work, the cellar was finally made dry, and the object the parties had in view was accomplished. It might very well have been done -before, for the remains of the well were to be, and were, seen. Aiid there was reason for asserting that the *175 plaintiffs were in fault in the performance of their work, for failing to provide an avenue for the escape of the water before they proceeded to lay the bottom they placed upon the cellar.
For this additional work and material, the plaintiffs charged the further sum of $490.17. But the right to recover it was resisted by the defendant for the alleged reason that it was necessary to complete the performance of the agreement as it had been made by the parties. And the jury seems to have adopted this view for this charge appears to have formed no part of the verdict.
But the defense made was not fully disposed of by rejecting this charge.
The defendant had been excluded from the occupancy and use of his dwelling by -the condition in which the cellar remained after the work done in 1874 had been completed, and during the time also which was consumed in connecting the cellar with the sewer, and again completing the work in the Summer and Fall of 1875. And for that, he claimed he should be recompensed by the verdict in this action. And the court held him to be entitled to that right, if his remedy for its redress had not been lost by the application of the statute of limitations.
Under that statute, it was considered requisite that his claim for the allowance of damages should be made by the service of an answer in the action presenting it as a counter-claim within the period of six years from the time when it accrued. And the jury were directed to allow it if that time had not expired when the answer containing it as a counterclaim was served, but to reject it if the answer was not in fact served before this period of six years had expired.
The effect of this ruling was to continue the application of the statute until the actual service of the defendant’s answer. And that ruling, while it defeated *176 the counter-claim, would probably have been strictly accurate if the counter-claim had been an independent cause of action, unconnected with the cause of action itself relied upon by the plaintiffs. But it was not, for the right to damages arose out of the partial failure of the plaintiffs to perform the contract which was the foundation of their own right to recover, for the rendition and acceptance of the account, did not exclude the contract and its terms from the controversy. They were still pertinent and important to the claims of both parties to the action. And if the contract was still continued unaffected by the statute of limitations as to the plaintiffs, it would seem to follow, that it must be in like condition as to the defendant. If it measured the obligations of the defendant, it had the same effect upon those of the plaintiffs. If they were not barred, it was because the contract still remained in force when they commenced their suit.
As they had performed it, their action was to be maintained or defeated. They could only insist upon their right to remuneration as they had performed their agreement. If that were a qualified or defective performance, then the defendant had the right to rely on the qualification or defect. Whatever it was, it was carried along with the contract, and to the extent that it existed, it would defeat the demand made by the plaintiffs for compensation for this work. It was an infirmity affecting the plaintiffs’ rights under the contract, as long as they were in a condition to be asserted. And if the statute of limitations did not defeat their remedy, it equally left the other unaffected, to which the defendant was entitled, for their failure to perform an integral part of the same agreement. If it was preserved in part, it was preserved as a whole, and it continued to be the measure of all the rights and remedies of the parties.
The statute itself contains no provision requiring any *177 different construction. It simply prescribes the time when the action itself must be commenced, without imposing any limit whatever on the time within which, in the same action, the defendant is to be restricted to the presentation of his counterclaim for a breach of the same agrément by the plaintiffs. If it had been intended to subject that to any other restriction than that within which it has been provided the answer shall be served, some positive evidence of that intention would have found expression in the law. That has been omitted, and the omission itself evinces the design that no distinction should be made between the right to enforce the several parts of an entire contract.
Such a construction of the statute of limitations as would produce a different result would be strikingly unjust, for it would put it in the power of one party entitled to the partial advantage of a contract to secure it by delay, even when the just enforcement of the residue of and a part of tlie same agreement, would avoid that result. And that could not have been intended to be promoted by the statute declaring the time within which an action should be commenced. What the law was intended to accomplish was, to prevent the enforcement of stale demands, not to provide the means by which injustice might be secured by disowning one of the parties to an existing or open controversy depending on the just observance of the other terms of one entire agreement.
The provisions made for the allowance of counterclaims connected with, or growing out of, the subject of the action, support the construction which has already been given to the statute prescribing the times within which actions must be commenced (Code Civ. Pro. § 501, subd. 1). For, without any restraint whatever, they are allowed to be relied upon by way of defense whenever the subject with which they may be *178 connected is made the foundation of an action. No other circumstance has been required to entitle the defendant to present his counterclaim than that it is connected with, or arises out of the contract forming the foundation of the action. And as that was its character in this instance, the defendant was legally entitled to rely upon it for his protection, as long as the plaintiffs could invoke the aid of the same agreement to establish their demand against him.
It is no answer to this right that they presented their demand on the alleged acceptance of the account. For the defendant’s obligation to do that was to be found only in the agreement. If he bound himself to pay by not objecting to the account, it was to pay for labor performed and materials supplied, in observing the terms of the contract, and if that was not done in a reasonable time, as ¡he court at the trial held it should be, the defendant by force of the agreement was entitled to indemnity for the loss resulting to him from the delay. The right to that was rooted in the same agreement as the plaintiffs’ claim for their labor and materials, and it was no part of the object of the statute to withhold the proper legal remedy to redress the one, while it preserved it in full force for the benefit of the other. The rulings discriminating between the parties and excluding indemnity to one, while it permitted it to the other, were excepted to by the defendant, and as he was injuriously affected by such rulings, another trial will be necessary to attain the ends of justice in the action.
The rule to be applied is similar to that which was observed before the enactment- of either Code, which allowed a party who was liable on one portion of a contract, to protect himself by the allowance of damages sustained by himself through the default, in failing to perform another part of the same agreement, of the other contracting party (Batterman v. Pierce, 3 Hill, *179 171), but enlarged by the present Code § 508, as to the extent of the damages to be recovered. As long as one remains, it may be wholly, or partially answered, according to the facts, by the other. While the law preserves the right of the plaintiff, it can only be just by continuing that of the defendant.
The judgment and order should be reversed and a new trial ordered with costs to the defendant to abide the event.
Davis, P. J., and Brady, J., concurred.